**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| iQUARTIC, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. |
| | )   15-13015-NMG |
| W. BARRETT SIMMS, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

<u>MEMORANDUM & ORDER</u>

**GORTON, J.**

This case arises from a breakdown of an employment relationship between a software company and its former employee. Plaintiff iQuartic, Inc. ("iQuartic") alleges that defendant W. Barrett Simms ("Simms") breached his employment and confidentiality agreements during the course of his employment and after his resignation.

Pending before the Court is plaintiff's motion for a preliminary injunction to enjoin defendant to maintain the status quo on his electronic devices, to produce all electronic devices for data imaging, to compel the defendant to appear at an exit interview and to prohibit defendant from disclosing confidential information. For the reasons that follow, the Court will allow the motion.

I.    **Background**

iQuartic is a health information technology start-up
founded in 2012 that develops software for medical providers and
health insurance companies.  In October, 2014, it hired Simms as
its Director of Engineering to write software code for its pilot
software product.

A.    **Employment and confidentiality agreements**

At the start of his employment with iQuartic, defendant
signed an employment agreement whereby he agreed 1) "not to
engage in any other business or private services to any other
business," 2) to hold in a "fiduciary capacity...all proprietary
or confidential information" belonging to iQuartic and 3) to
attend an exit interview for the purposes of, <u>inter</u> <u>alia</u>,
"surrendering to [iQuartic] all proprietary, confidential
information" belonging to it.

Simms also signed a confidentiality agreement through which
he was obligated not to disclose any iQuartic confidential
information during or after his employment except in connection
with his employment duties.  Within 48 hours of a request by
iQuartic, all confidential information and company materials
were to "be returned to [iQuartic] and completely and
permanently purged from" personal files.  The confidentiality
agreement further provided a work for hire provision in which
Simms agreed that all writings, documents, developments and

-2-

computer programs that he created or developed at any time during his employment would be considered as "developed for the sole and exclusive use of an ownership by [iQuartic]."

**B.   Alleged breach of the agreements**

Plaintiff contends that in about February, 2015, Simms became uncooperative and increasingly argumentative, and he stopped coming into the office on a regular basis.  Although plaintiff allegedly promised to complete software development by the end of 2015, upon inquiry in May, 2015, defendant revealed that the software was only 2% complete and would take two additional years to complete.

In June, 2015, defendant resigned from iQuartic and allegedly refused 1) to attend an exit interview as required by his employment contract, 2) to surrender proprietary confidential information and company materials belonging to iQuartic and 3) to provide any significant knowledge transfer about the software to his replacement.  Plaintiff contends that it has dedicated more than 160 hours to decipher and run defendant's software code but has been unsuccessful.  Finally, plaintiff alleges that Simms divulged proprietary and confidential information about iQuartic's pilot product to two companies during unauthorized meetings.

In his opposition to plaintiff's motion for a preliminary injunction, defendant disputes iQuartic's contentions that he

-3-

1) refused to participate in an exit interview as required by his agreement, 2) shared iQuartic proprietary information with third parties in violation of the confidentiality agreement and 3) hid code and took plaintiff's proprietary information when he resigned from the company.

### C.   Procedural history

Plaintiff filed its complaint in July, 2015 for 1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq. (Count I), 2) breach of contract (Counts II and III), 3) breach of the covenant of good faith and fair dealing (Count IV), 4) interference with advantageous relations and/or contractual relations (Count V), 5) misappropriation of proprietary, confidential and trade secret information (Count VI), 6) violation of M.G.L. c. 93A (Count VII) and 7) fraud (Count VIII).

Plaintiff then moved ex parte for a temporary restraining order ("TRO") and a preliminary injunction, alleging that Simms "fled the state of Massachusetts to avoid service of iQuartic's Complaint" and misappropriated plaintiff's proprietary information.  The Court held an ex parte hearing with respect to the motion and entered a TRO against defendant.

Simms was ordered 1) to hold and maintain the status quo of all electronically stored information ("ESI") in his possession, including iQuartic ESI, 2) to turn over to iQuartic all

-4-

information in his possession necessary to utilize the software code that he was paid to develop while at iQuartic and 3) to produce all personal computers and personal electronic devices for analysis by a neutral and independent forensics expert to itemize all iQuartic ESI stored in defendant's computers and to verify that he had not transferred or retained any iQuartic proprietary information.

Upon receiving service of the TRO, defendant produced his cellular phone, a thumb drive and a tablet for forensic review. He represented that there were no additional devices used in connection with his employment with iQuartic. Plaintiff contends that the preliminary results indicate that the thumb drive contains no data and had never been connected to defendant's tablet in the first place. Instead, evidence appeared to reveal that additional devices had been connected to the tablet but were not provided for examination. The analysis also revealed that a secure data deletion tool was run on the tablet at least twice on August 5, 2015, the same date on which defendant was served with the summons and complaint in this case.

On August 13, 2015, the Court heard oral argument from counsel regarding plaintiff's motion for a preliminary injunction and plaintiff's motion for an emergency writ of attachment of real estate. The Court urged the parties to

conduct the agreed upon exit interview within one week.  The
Court informed the parties that if they were unable to agree
upon a temporary resolution of their dispute, it would extend
the TRO, enter a modified attachment of defendant's real estate
and subsequently enter some sort of preliminary injunction for
plaintiff.

Shortly thereafter, the Court extended the TRO to August
28, 2015 with the additional provision that enjoined defendant
from divulging to non-parties any iQuartic confidential
information.  The Court also entered a writ of attachment of
defendant's property to the value of $100,000.  Because the
parties have been unable to reach an accommodation, the Court
proceeds to impose one.

## II.  <u>Personal jurisdiction and venue</u>

Before assessing the parties' arguments regarding the
preliminary injunction, the Court first addresses the contested
issues of personal jurisdiction and venue.

### A.   **The parties' choice-of-law provisions**

Forum selection clauses "are prima facie valid and should
be enforced unless enforcement is shown by the resisting party
to be 'unreasonable' under the circumstances." <u>OsComp Sys., Inc.</u>
<u>v. Bakken Exp., LLC</u>, 930 F. Supp. 2d 261, 268 (D. Mass. 2013).

The parties in this case do not dispute the principle that
their choice-of-law provisions will govern the Court's personal

-6-

jurisdiction and venue analyses.  Rather, the parties disagree
on whether the choice-of-law provision in the employment
agreement supersedes the choice-of-law provision in the
confidentiality agreement.

Defendant contends that the confidentiality agreement
contains an express choice-of-law provision dictating that the
agreement be governed by the laws of Pennsylvania for personal
jurisdiction and venue purposes.

Plaintiff asserts that the Massachusetts choice-of-law
provision in the employment agreement preempts the Pennsylvania
choice-of-law provision in the confidentiality agreement.  The
employment agreement expressly provides that the employment
agreement, the confidentiality agreement and all ancillary
agreements "shall be governed by the laws of the Commonwealth of
Massachusetts."  Plaintiff thus asserts that the Massachusetts
choice-of-law provision controls and renders the Pennsylvania
choice-of-law provision ineffective.

The Court agrees with plaintiff.  The employment agreement
expressly incorporates the confidentiality agreement by
reference.  The choice-of-law provision in the employment
agreement governs all disputes arising out of both the
employment agreement and the confidentiality agreement.
Massachusetts law thus governs the personal jurisdiction and
venue determinations in this case.

B.    **Personal jurisdiction**

The Massachusetts long-arm statute for personal jurisdiction, M.G.L. c. 223A, § 3, reaches the full extent that the Constitution allows, and so the Court proceeds directly to the constitutional analysis. See Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995).  The Due Process Clause requires minimum contacts between a nonresident defendant and the forum state such that the exercise of personal jurisdiction over that defendant accords with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Personal jurisdiction can be specific or general. Pritzker v. Yari, 42 F.3d 53, 59 (1st Cir. 1994).  Specific jurisdiction exists when the plaintiff's cause of action arises out of or relates to the defendants' contacts with the forum state. Id. at 60.  Specific jurisdiction is appropriate when 1) the claims arise out of or are related to the defendants' in-state activities, 2) the defendants have purposefully availed themselves of the laws of the forum state and 3) the exercise of jurisdiction is reasonable under the circumstances. Sawtelle, 70 F.3d at 1389.  Alternatively, general jurisdiction exists when the defendant has engaged in "continuous and systematic activity", unrelated to the suit, in the forum state. Id.

The Court finds that it has personal jurisdiction over defendant under Massachusetts law.  Defendant lived in Massachusetts and is thus subject to general jurisdiction. Alternatively, defendant is subject to specific jurisdiction because he was employed by plaintiff in Massachusetts, the employment and confidentiality agreements were executed in Massachusetts and all of defendant's alleged misconduct occurred in Massachusetts.  Because the Court has personal jurisdiction over defendant, preliminary injunctive relief may be imposed.

### C.    Venue

The Massachusetts law on venue states that "if any one of the parties thereto lives in the commonwealth," the venue for a transitory action properly lies "in the county where one of them lives or has his usual place of business." M.G.L. c. 223, § 1. See also M.G.L. c. 223, § 2 (providing that the venue for a transitory action in a district court properly lies in the judicial district, or an adjacent judicial district, where one party lives or has his usual place of business).

The Court finds that venue is proper in this Court because defendant resided in Massachusetts while employed by plaintiff.

### III. Plaintiff's Motion for a Preliminary Injunction

### A.    Legal standard

In order to obtain a preliminary injunction, the moving party must establish

> (1) a substantial likelihood of success on the merits,
> (2) a significant risk of irreparable harm if the
> injunction is withheld, (3) a favorable balance of
> hardships and (4) a fit (or lack of friction) between
> the injunction and the public interest.

Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003)

(citation omitted).  Out of these factors, the likelihood of

success on the merits "normally weighs heaviest on the

decisional scales." Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d

62, 66 (1st Cir. 2009).

The Court may accept as true "well-pleaded allegations [in

the complaint] and uncontroverted affidavits." Rohm & Haas Elec.

Materials, LLC v. Elec. Circuits, 759 F. Supp. 2d 110, 114, n.2

(D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350, n.1

(1976).  The Court may also rely on otherwise inadmissible

evidence, including hearsay, in deciding a motion for

preliminary injunction. See Asseo v. Pan American Grain Co.,

Inc., 805 F.2d 23, 26 (1st Cir. 1986).

**B.   Application**

**1.   Likelihood of success on the merits**

**i.   Computer Fraud and Abuse Act, 18 U.S.C.
§ 1030 (Count 1)**

A claim under 18 U.S.C. § 1030(a)(4) requires a plaintiff

to prove that the defendant

> knowingly and with intent to defraud, accesse[d] a
> protected computer without authorization, or exceed[ed]
> authorized access, and by means of such conduct
> furthere[d] the intended fraud and obtain[ed] anything

> of value, unless the object of the fraud and the thing
> obtained consists only of the use of the computer and
> the value of such use is not more than $5,000 in any 1-
> year period.

18 U.S.C. § 1030(a)(4).  Similarly, a claim under 18 U.S.C.

§ 1030(a)(5)(A) requires a plaintiff to demonstrate that the

defendant

> intentionally accesse[d] a protected computer without
> authorization, and as a result of such conduct,
> recklessly cause[d] damage.

18 U.S.C. § 1030(a)(5)(A).

The Court finds that plaintiff has demonstrated a

substantial likelihood of success on its federal claims because

there is evidence that defendant 1) had access to plaintiff's

computer systems and protected information, 2) refused to

surrender all proprietary and confidential information upon

termination of his employment, 3) shared details of his work

product with plaintiff's prospective clients during unauthorized

meetings and 4) caused plaintiff harm by forcing it to expend

time and effort interpreting his code without the necessary

information and by jeopardizing plaintiff's future business

prospects.

**ii.  Breach of contract (Counts 2 and 3)**

Under Massachusetts common law, a plaintiff with a breach

of contract claim must show that 1) the parties reached a valid

and binding agreement, 2) the defendant breached the terms of

-11-

that agreement and 3) the plaintiff's damages are a proximate cause of that breach. <u>Michelson</u> v. <u>Digital Fin. Servs.</u>, 167 F.3d 715, 720 (1st Cir. 1999).

The Court finds that plaintiff has demonstrated a likelihood of success on its breach of contract claims because there is evidence that 1) the parties signed valid employment and confidentiality agreements, 2) defendant withheld plaintiff's proprietary and confidential information despite his contractual obligations to the contrary and 3) defendant's conduct proximately caused plaintiff to suffer delays in developing its pilot product.

### iii. Misappropriation of trade secret information, M.G.L. c. 93, § 42 (Count 6)

A plaintiff can establish misappropriation of trade secrets under M.G.L. c. 93, § 42 by proving that defendant unlawfully took, carried away, concealed, copied, or fraudulently or deceptively obtained, any trade secret, from any person or corporation, with the intent to convert the information to his own use. M.G.L. c. 93, § 42.

The Court finds that plaintiff has established a likelihood of success on its trade secret claims because of evidence that defendant spoke to the company's prospective clients about the company's pilot product during unauthorized meetings.

## 2.   **Irreparable injury**

Irreparable injury is "a substantial injury that is not accurately measureable or adequately compensable by money damages." Ross-Simons of Warwick v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996).  Plaintiffs alleging irreparable injury must show more than a "tenuous or overly speculative forecast of anticipated harm." Id.  Examples of irreparable injuries include loss of incalculable revenue and harm to goodwill or reputation. Id. at 19-20.  In the preliminary injunction context, the First Circuit Court of Appeals measures irreparable harm

> on a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown.

Braintree Labs, 622 F.3d at 42-43 (internal quotation marks and citations omitted).  The Court has already determined that the plaintiff has a substantial likelihood of succeeding on the merits of its federal, contract and trade secret claims. Plaintiff therefore has a lower threshold to overcome to establish irreparable harm.

Plaintiff claims that defendant's refusal to turn over all of plaintiff's proprietary and confidential information in his possession has delayed the company's development of the pilot product and potentially jeopardizes the company's ability to deliver the product to its client.  Plaintiff is a start-up

-13-

company and its future business success depends heavily on its
ability timely to deliver functional products to its initial
clients.  Plaintiff alleges that it now faces a threat to its
existence as a business.  The Court finds the claim credible and
therefore plaintiff has met the lower threshold of demonstrating
irreparable harm.

### 3.    Remaining factors

Plaintiff contends that the balance of equities tips in its
favor because a preliminary injunction will not harm defendant,
who has already agreed to injunctive relief in the event that
the Court finds a breach, and because plaintiff will suffer
immediate and irreparable harm without the preliminary
injunction. Defendant does not contest plaintiff's arguments.
The Court therefore concludes that the balance of equities tips
in plaintiff's favor.

Finally, plaintiff contends that its requested relief
comports with the public interest because prohibiting computer
fraud and abuse, enforcing contractual obligations, protecting
trade secrets and creating innovation incentives are in the
public interest.  Defendant responds that a preliminary
injunction would be contrary to the public interest because
plaintiff only instituted this lawsuit out of retaliation and
bad faith.  The Court finds that plaintiff's motive for
initiating this lawsuit may be relevant later but consideration

-14-

of motive is beyond the scope of the pending motion.  The Court agrees with plaintiff that a preliminary injunction is in the public interest.

Accordingly, the Court will allow plaintiff's motion for a preliminary injunction.

## IV.   Security under Fed. R. Civ. P. 65(c)

A movant for injunctive relief must give security in an amount that the Court considers proper to pay costs and damages sustained by any party found to have been improvidently enjoined. Fed. R. Civ. P. 65(c).  The Court will therefore require the posting of a security bond in the amount of $10,000 to cover defendant's potential cost of any negative consequences that may result from the issuance of the preliminary injunction.

## ORDER

For the foregoing reasons, plaintiff's motion for a preliminary injunction (Docket No. 4) is **ALLOWED,** and injunctive relief in the form of the preliminary injunction attached hereto will be entered.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 2, 2015

-15-